**STATE of Missouri, Respondent,**

v.

**Robert M. MEANOR, Appellant.**

No. 75787.

Supreme Court of Missouri,
En Banc.

Oct. 26, 1993.

Rehearing Denied Nov. 23, 1993.

James Jay Knappenberger, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joan F. Gummels, Asst. Atty. Gen., Jefferson City, for respondent.

HOLSTEIN, Judge.

Shortly after midnight, on September 23, 1989, Steven Eads and his wife, Angela, were

traveling west on Highway 100 in Franklin County, returning home from a baseball game in St. Louis. Their Mazda pickup truck was struck head-on by a Ford Ranger pickup truck operated by defendant Robert M. Meanor, who was attempting to pass a third vehicle. Steven Eads was killed and Angela was injured. Defendant was charged with and ultimately convicted of involuntary manslaughter, § 565.024, second-degree assault, § 565.060.1(4), possession of marijuana, § 195.202, RSMo Supp.1992, and possession of drug paraphernalia, § 195.233, RSMo Supp.1992.[1] Defendant was given sentences of five years for manslaughter, three years for assault, six months for possession of marijuana, and six months for possession of drug paraphernalia. He appealed to the Missouri Court of Appeals, Eastern District. Following opinion, this Court granted transfer. Rule 83.03. We affirm.

## I.

One who operates a motor vehicle in an intoxicated condition and, when doing so, acts with criminal negligence and causes the death of any person is guilty of involuntary manslaughter. § 565.024.1(2). Similarly, a person operating a motor vehicle while in an intoxicated condition who acts with criminal negligence so as to cause physical injury is guilty of assault in the second degree. § 565.060.1(4). "Intoxicated condition" is defined as "under the influence of alcohol, a controlled substance, a drug, or any combination thereof." § 565.002(4).

In Count I of the information it is alleged that the defendant was "under the influence of a combination of alcohol and marijuana" when he caused the death of Steven Eads. In Count II, the information alleges that the defendant was under the influence of a combination of alcohol and marijuana when he caused physical injury to Angela Eads. The first point on appeal claims that the trial court should have entered a judgment of acquittal on Counts I and II because the evidence was insufficient to establish defendant was under the influence of drugs and alcohol.

In determining whether the evidence is sufficient, we take the record in a light most favorable to the state and grant the state all reasonable inferences from the evidence. Contrary inferences are disregarded. Viewing the evidence in this light, the Court then decides whether a reasonable juror could find each of the elements beyond a reasonable doubt. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). Missouri no longer follows the rule which, in a circumstantial evidence case, required that the evidence must be inconsistent with any reasonable theory of defendant's innocence in order to support a conviction. *State v. Grim,* 854 S.W.2d 403, 406 (Mo. banc 1993).

On the evening of September 22, 1989, Robert Meanor and his wife rented a room at the Ramada Inn near Six Flags. They planned an evening out with friends in celebration of Sue Meanor's birthday. The plan was for Sue to "party" and Robert to remain sober enough to drive. Robert and Sue departed the Ramada with friends Vic and Vicki Williams at about 9:00 p.m. They went to a bar known as Washington Landing, where they drank, danced, and played pinball and shuffleboard until around 11:30 p.m. During this period of time, Sue became very intoxicated. Robert had two or three beers and one "lip licker," a shot containing Bailey's, Amaretto, and Kahlua. From the bar the Meanors drove to a Pizza Hut in Washington, Missouri. Meanor and a Pizza Hut employee became engaged in a disagreement over whether Meanor had paid for food which had been ordered. Meanor refused to pay, and Pizza Hut refused to give him his food. Police were summoned. An officer of the Washington Police Department came to the Pizza Hut at around 12:30 a.m. The officer took Meanor outside and eventually persuaded him to leave, threatening to arrest him for trespassing if he did not. Before allowing Meanor to drive, however, the officer ran two field sobriety tests to ensure that Meanor was not impaired. By this time, Sue Meanor was passed out in the Ford pickup truck.

It was less than thirty minutes later that the crash occurred. Seventeen-year-old

---

1. References to statutes are to RSMo 1986 unless otherwise stated.

Randy Beach was driving east on Highway 100 when he noticed the Meanor vehicle approaching rapidly from the rear. Due to the speed with which the vehicle was gaining, Beach believed Meanor was a police officer about to pull him over. Consequently, Beach checked his speed. It showed he was driving 63 miles per hour. Beach indicated he slowed little, if any, assuming he was already caught. As Meanor got close, he pulled into the westbound lane of Highway 100 to pass Beach and struck the Mazda pickup truck head-on. Steven Eads died from the injuries he received in the accident. Angela Eads was a passenger in the truck her husband was driving. She received serious physical injuries. A number of travelers stopped at the scene before the arrival of emergency vehicles. Fire in the engine of the Eads vehicle was extinguished.

Highway Patrol officer Vayla Thomas–Nelson arrived at the scene shortly after 1:00 a.m. She observed Robert Meanor lying on the road. Meanor had suffered serious injuries. However, he was conscious and yelling in a manner officer Thomas–Nelson described as "obnoxious." She observed that he had bloodshot eyes and that his speech seemed somewhat slurred. She testified that at the scene she smelled intoxicants about Meanor's person. In addition, she detected the odor of burnt marijuana in the cab of the Ford pickup truck. Later that morning, upon visiting Meanor at the hospital, she detected the odor of burnt marijuana about him. In the course of investigating the scene of the accident, officer Thomas–Nelson looked inside the Meanors' Ford Ranger. In it she discovered a small pipe containing residue of burnt marijuana, an envelope containing a small amount of marijuana, and a plastic bag containing 11 grams of marijuana. The envelope and pipe were in the center of the floorboard more toward the passenger side of the seat. The plastic bag was in a door pouch on the driver's side. The trooper testified that she was familiar with the odor of marijuana, having smelled burnt marijuana during her training at the Highway Patrol academy and having come into contact with marijuana during her six years on the patrol. When asked if she had an opinion as to whether Meanor was intoxicated, she indicat-ed she had such an opinion and she believed him to be intoxicated.

A blood sample was taken from Meanor. It indicated he had a blood alcohol content of .02%. The blood sample taken was insufficient to be tested for the presence of drugs.

The state's theory was that Meanor was intoxicated by a combination of alcohol and marijuana. Defendant focuses on officer Theilmann's testimony indicating defendant was not intoxicated when he left the Pizza Hut, evidence that defendant's blood alcohol was .02%, one-fifth of the amount constituting prima facie evidence of alcohol intoxication, and the absence of direct evidence that the defendant had consumed marijuana. Defendant discounts the testimony of the Highway Patrol trooper that defendant was intoxicated when she observed him at the scene of the accident, that he smelled of intoxicants and of burnt marijuana after the accident, that marijuana and a device to smoke marijuana were found within defendant's easy reach after the accident and that the inside of the Meanors' pickup smelled of marijuana.

■ In the case of alcohol intoxication, the courts of this state have consistently held that intoxication sufficient to sustain a conviction may be proved by a lay witness who has had a reasonable opportunity to observe the alleged offender. *State v. Ruark*, 720 S.W.2d 453, 454 (Mo.App.1986); *State v. Walker*, 588 S.W.2d 726, 727 (Mo.App.1979); and *State v. Powell*, 306 S.W.2d 531, 532 (Mo.1957). No Missouri case has yet determined whether lay witness testimony of intoxication by *drugs* is sufficient to sustain a conviction. Outside of this state there are apparently two lines of authority. One line of authority is represented by *People v. Jacquith*, 129 Ill.App.3d 107, 84 Ill.Dec. 357, 472 N.E.2d 107 (1984), and *State v. Rifkin*, 140 Vt. 472, 438 A.2d 1122 (1981). The other line of authority is characterized by *Harris v. District of Columbia*, 601 A.2d 21 (D.C.App. 1991), and *State v. Lindley*, 286 N.C. 255, 210 S.E.2d 207 (1974).

Both *Rifkin* and *Jacquith* turn on the competency of arresting officers to testify as expert witnesses in identifying the character-

**888**

istics of a person who has consumed drugs. The problem with these two cases is, they fail to distinguish between the *admissibility* of the evidence of intoxication and the *sufficiency* of the evidence of intoxication. *Rifkin* rejected the testimony of the arresting officer regarding the defendant's impairment as sufficient evidence because "drugs can produce a confusing array of symptoms which cannot be sorted out without specialized training." 438 A.2d at 1124. In *Jacquith*, the court held that the police officers were non-experts and were not competent to testify as to the defendant's intoxication, thus, the evidence was insufficient. 129 Ill.App.3d 107, 84 Ill.Dec. 357, 472 N.E.2d at 112–13. But in this case, the Court is not called on to decide whether the trooper's opinion was admissible.

Another distinction is found in the particular statutes of the states in question. Both the Vermont and the Illinois statutes contain a special requirement that to convict one of driving under the influence of drugs, the influence must be to a degree that renders such person incapable of safe driving. *Ill. Rev.Stat.* ch. 95 1/2, para. 11–501(a)4 (1982), and *Vt.Stat.Ann. tit. 23*, § 1201(a)(3) (1987). *See also Smithhart v. State*, 503 S.W.2d 283 (Tex.Cr.App.1973), holding that to convict under a statute which required proof that the defendant was "under the influence of drugs to a degree which rendered him incapable of safely operating the vehicle" required expert testimony connecting the symptoms to the drug. 503 S.W.2d at 286; *Tex.Rev.Civ.St. Ann.* art. 6701d, § 50 (West 1977). Missouri has no special statute requiring proof of any particular degree of impairment by drugs.

Other jurisdictions having statutes similar to Missouri's have concluded that the proof required to establish driving under the influence of drugs should be no greater and no different from the proof required to establish driving under the influence of alcohol, other than the evidence must relate to the particular substance involved. "There is no reason why the same level of proof should not suffice to support a conviction for driving under the influence of drugs." *Harris v. District of Columbia*, 601 A.2d at 27. These cases hold that the court must consider all the evidence

admitted, whether competent or not, in a light most favorable to the state. Whether such evidence is direct, circumstantial, or both, if there is evidence from which the jury could find that the defendant operated a motor vehicle while under the combined effects of alcohol and drugs, the conviction should be affirmed. *State v. Lindley*, 210 S.E.2d at 210.

The *Harris* and *Lindley* cases are consistent with the prior decisions in Missouri which permit conviction of intoxicated driving even on the testimony of a lay witness. Where there is evidence that a person has recently consumed alcohol and marijuana and is then observed exhibiting signs of impaired judgment and motor skills consistent with intoxication, reasonably intelligent jurors may conclude that the cause of the impairment is the combined effects of alcohol and marijuana.

▮ Here there is no issue on appeal as to the admissibility of the officer's opinion that defendant was intoxicated. The cause of such intoxication, ingestion of a combination of alcohol and marijuana, is clearly inferable from the circumstantial evidence in the case. The claim that the evidence of intoxication was insufficient is denied.

II.

In the second point on appeal, defendant argues that he should be granted a new trial because the prosecuting attorney told the jury during opening statement that appellant's driver's license was suspended at the time of the accident. This was Count V of the original information and was not submitted to the jury nor was evidence in support of Count V actually produced.

▮ The state attempted to introduce Meanor's driving record at trial. However, defendant objected to its admission, and the objection was sustained. References during opening statement to arguably admissible evidence made in good faith with a reasonable expectation that the evidence will be produced are not cause for reversal. *State v. Brooks*, 618 S.W.2d 22, 24 (Mo. banc 1981). Point II is denied.

## III.

■ Defendant's third point is that the evidence is insufficient to establish that defendant was intentionally and consciously in possession of drugs and drug paraphernalia. Where the possession is based on constructive possession of drugs found in a jointly controlled vehicle, there must be additional facts to buttress the inference that the defendant had knowledge of the presence of the controlled substance before constructive possession is shown. *State v. Adkins*, 800 S.W.2d 28, 30 (Mo.App.1990).

■ Robert Meanor owned the truck. He and his wife, Sue, had been married just one week. The largest amount of marijuana was found in the driver's side pouch, within easy reach. There was a smell of burnt marijuana in the truck and the odor of marijuana about Meanor's person, indicating recent use of marijuana. Sue denied having used marijuana that night.

The facts in *State v. Bowyer*, 693 S.W.2d 845 (Mo.App.1985), on which Meanor relies, are readily distinguishable. In that case the defendant was driving a car of his estranged wife. It was the first time he had been in the car in six months and all the marijuana was concealed in a container within the console between the two front seats. In the present case, Meanor owned and had routine access to the truck and there was ample evidence of recent use of marijuana. Thus, the facts are sufficient to establish Meanor's intentional and conscious possession of the marijuana and the pipe. The third point is denied.

## IV.

■ In his final point, defendant challenges the sufficiency of the information, pointing out that it fails to indicate that he possessed drug paraphernalia with the "intent to use" such paraphernalia. § *195.233.1*, RSMo Supp.1992.

Meanor first raised this defect in his motion for new trial.

> When the issue [of a defective information] is raised for the first time after verdict, the indictment or information will be deemed insufficient only if it is so defective that (1)

it does not by any reasonable construction charge the offense of which defendant was convicted or (2) the substantial rights of the defendant to prepare a defense and plead former jeopardy in event of acquittal are prejudiced.

*State v. Parkhurst*, 845 S.W.2d 31, 35 (Mo. banc 1992). In *Parkhurst*, the word "knowingly" was omitted from an information charging the defendant with brandishing a deadly weapon. Here also a mental element was omitted from an information which was otherwise complete. Like *Parkhurst*, the information here included a reference to the statute under which Meanor was charged, the date of the offense and a description of the device he possessed. The information is not so defective that it can be said not to charge the offense of which defendant was convicted. The information is sufficiently detailed to permit him to prepare a defense and to permit him to plead former jeopardy if charged again. Point IV is denied.

Judgment affirmed.

COVINGTON, C.J., and BENTON, THOMAS, and LIMBAUGH, JJ., concur.

ROBERTSON, J., concurs in part and dissents in part in separate opinion filed.

PRICE, J., concurs in opinion of ROBERTSON, J.

ROBERTSON, Judge, concurring in part and dissenting in part.

At some moment early on the morning of September 23, 1989, Robert Meanor decided that speed limits, good judgment and concern for others in the operation of a motor vehicle played an inconsequential role in his life. Through the darkness of that Franklin County night Meanor sped, his truck transformed into a hurtling metaphor for an evening in which he had made his lack of grace manifest to those with whom he had dealt.

Steven Eads and his wife, Angela, had left St. Louis after attending a baseball game. Their drive home took them along Highway 100 in Franklin County. Randy Beach had also chosen Highway 100 as his route home that night. Beach saw a vehicle approaching him in his rear view mirror. Noting his own

speed and the speed with which the trailing vehicle cut the distance between them, Beach assumed a law enforcement officer had caught him exceeding the speed limit. The vehicle shot around Beach, slamming head-on into Steven and Angela Eads, snatching the breath of life from Steven Eads, injuring his wife, and leaving her a widow.

Meanor's reckless and uncaring acts that night are beyond comprehension to persons of normal sensibilities. No one can explain or condone them. But that is not the question before this Court.

The record shows beyond a reasonable doubt that Meanor possessed drugs and drug paraphernalia at the time of his arrest. I fully concur with the majority's affirmance of Meanor's conviction on that count of the information. With respect, I dissent from the majority's conclusion that the State made a submissible case against Meanor on the involuntary manslaughter count.[1] The fact that Meanor committed a hideous act does not of itself render him guilty of involuntary manslaughter under the laws of Missouri.

When determining whether the evidence is sufficient to support a conviction, the evidence and all inferences reasonably drawn from it are considered in the light most favorable to the verdict, disregarding all contrary evidence and inferences. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). On appeal, the relevant inquiry is whether any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *State v. Grim*, 854 S.W.2d 403, 407 (Mo. banc 1993).

As the majority concedes, this jury could not convict Meanor without drawing inferences from direct and circumstantial facts and believing that those inferences are true beyond a reasonable doubt. The ultimate factual decision left to the jury is whether Meanor was intoxicated at the time he passed Randy Beach on Highway 100 and killed Steven Eads.

A brief summary of the uncontroverted evidence, opinion testimony, and inferences the jury must have drawn to reach its conclusion follows.

*Evidence*

1. Meanor consumed alcoholic beverages on the evening of September 23.

2. Meanor was rude and abrasive at the Pizza Hut.

3. Meanor passed a field sobriety test administered by a law enforcement officer immediately prior to leaving the Pizza Hut.

4. Meanor drove his truck at a high rate of speed.

5. Meanor passed Randy Beach and, while passing Beach, collided with the Eads' vehicle.

6. Meanor suffered a broken jaw, three broken ribs, a broken collar bone, two broken feet, a broken leg and crushed lungs.

7. There were several bottles of beer, one open and several broken, in Meanor's truck after the accident.

8. Meanor was obnoxious and spoke with slurred speech after the accident. His breath bore an odor of alcohol.

9. Meanor's truck smelled of beer and burnt marijuana after the accident; Meanor smelled of alcohol and burnt marijuana at the hospital.

10. Meanor smelled of alcohol and marijuana about an hour after the accident, when the trooper visited him in hospital.

11. Meanor's blood alcohol measured 0.02% at the hospital, well below the statutory standard for alcohol intoxication.

12. No one tested Meanor's blood for evidence of drug use.

*Opinion Testimony*

1. State Trooper Vayla Thomas–Nelson's opinion, over objection as to lack of foundation, "I believe him [Meanor] to be intoxicated."

*Inferences*

1. Meanor smoked marijuana while driving the truck. (Inferred from the

---

**1.** To the extent that Meanor's conviction for second degree assault, Section 565.060.1(4), RSMo 1986, depends on a proof of his intoxication, the argument I make here applies with equal force.

presence of drug paraphernalia and burnt marijuana smell in the truck)

2. Meanor consumed alcohol after leaving the Pizza Hut and prior to the accident. (Inferred from the the presence of open and broken beer bottles in Meanor's truck.)

*Conclusionary Inference from the Inferences*

1. Meanor operated the truck in an intoxicated condition with criminal negligence causing the death of Steven Eads.

As the majority says, a person is guilty of involuntary manslaughter if he (or she) "[w]hile in an intoxicated condition operates a motor vehicle in this state and, when so operating, acts with criminal negligence to cause the death of any person." Section 565.024.1(2), RSMo 1986. This section must be read in pari materia with Section 577.-001.2, RSMo 1986, which states that "a person is in an *'intoxicated condition'* when he is under the influence or [sic] [of] alcohol, a controlled substance, or drug, or any combination thereof." [Emphasis in original.] Section 577.037.5, RSMo 1986, states:

Any charge alleging a violation of Section 577.010 ... shall be dismissed with prejudice if a chemical analysis ... demonstrate[s] that there was less than ten-hundredths of one percent of alcohol in the defendant's blood unless....

(2) There is evidence that the defendant was under the influence of a controlled substance, or drug, or a combination of either or both with or without alcohol; or

(3) There is substantial evidence of intoxication from physical observations of witnesses or admissions of the defendant.

After the collision in this case, Meanor consented to a blood test to determine the level of intoxicants in his system. The lab test showed that defendant had a blood alcohol content of 0.02 percent—twenty percent of the legal limit. Under Section 577.037.5, there is a rebuttable presumption that a person with a blood alcohol content of less than 0.10% is not intoxicated. The presumption may be rebutted if the State can show elements of Section 577.037.5(2) or (3).

The majority opinion concludes that Trooper Nelson–Thomas' opinion testimony satisfies Section 577.037.5(3), and from this opinion a reasonable juror could find beyond a reasonable doubt that the evidence satisfies Section 577.037.5(2). Thus, the *sine qua non* of the State's case is the opinion testimony of Trooper Nelson–Thomas.

Meanor's counsel objected to the admissibility of the trooper's opinion testimony at trial. Quite correctly, the majority concludes that counsel failed to preserve the question of the admissibility of the trooper's opinion for appellate review despite the presence of the proper and timely objection at trial on that very point. Once the majority determines that the question of *admissibility* is resolved, the question of *submissibility* is easily and correctly resolved by the majority. My disagreement with the majority hinges on its premise; I do not believe admissibility of the trooper's opinion testimony is hidden from appellate review. Further, I believe the trial court erred in admitting her opinion on the question of intoxication.

Rule 30.20 permits an appellate court to consider plain error *sua sponte.* *"Whether briefed or not,* plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." [Emphasis added.] *Id.*

First, the trial court committed error in overruling Meanor's objection to the admission of Trooper Nelson–Thomas' opinion as lacking foundation. There is nothing in this record to show that Trooper Nelson–Thomas had any prior experience or training in identifying characteristics of persons intoxicated by drugs. Her opinion concerning Meanor's intoxication rested on her observations of a seriously injured man who had received a blow to his face sufficient to break his jaw and knock out several teeth—he behaved obnoxiously, he had bloodshot eyes and slurred speech, his breath carried the odor of intoxicants, he smelled of burnt marijuana and there were marijuana and one open and two broken beer bottles in the truck. His behavioral characteristics may have been consistent with alcohol consumption, but

blood tests revealed that he was not intoxicated by alcohol.

For reasons that cannot be explained, no one tested Meanor's blood for the presence of drugs, though such a test is available. The failure of anyone to order such a test is consistent with the trooper's testimony. She described a person who appeared intoxicated by alcohol. Her opinion testimony merely extends that conclusion to a combination of alcohol and drugs, without any basis in experience or training for her conclusion as to the effect of drugs on an individual.

"[D]rugs can produce a confusing array of symptoms which cannot be sorted out without specialized training." *State v. Rifkin,* 140 Vt. 472, 438 A.2d 1122, 1124 (1981). Without laying some foundation setting out her specialized training and experience, I do not believe Trooper Nelson–Thomas could properly offer her opinion on Meanor's intoxication from a combination of drugs and alcohol when blood tests revealed that he was not intoxicated by alcohol alone.

Second, the error is outcome determinative and therefore highly prejudicial. The trooper's opinion was the lynch pin of the State's case. The admission of her opinion resulted in a manifest injustice.

I hasten to add that I do not read Rule 30.20 as an invitation for appellate courts to rummage through trial transcripts in search of unpreserved error. I am content to let Rule 29.15 serve to address trial counsel's failure to object to the admission of inadmissible evidence. But within the limited context of this case, the presence of a proper and timely objection at trial and the clear and prejudicial error of the trial court's ruling speak of such a manifest injustice that application of Rule 30.20 is appropriate.[2]

Such a conclusion is judicially economical as well. By hiding behind the slender reed of appellate counsel's failure to argue or brief the point, the majority's decision today merely invites the subsequent filing of a motion to recall the mandate in this case. *Hemphill v. State,* 566 S.W.2d 200, 208 (Mo. banc 1978).

There we will be asked to consider appellate counsel's ineffectiveness. Without the protection of the procedural barrier, I predict the Court will be hard pressed to uphold Meanor's conviction.

I believe it is more probable than not that Meanor was intoxicated when he killed Steven Eads. Had the State taken the simple expedient of testing Meanor's blood for drugs, any doubt—either way—would be resolved. However, the Due Process Clause of the Fourteenth Amendment prohibits the conviction of any defendant except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt. The State failed to meet that standard here.

I respectfully dissent from Part I of the majority's opinion.

---

**2.** It does not appear that the State was prejudiced by this unlikely procedural situation. What foundational evidence existed regarding the basis for Trooper Nelson–Thomas' opinion was admitted. It was simply insufficient to support the conclusion stated.