STATE of Missouri, Respondent,

v.

Curtis OWEN, Appellant (Two Cases).

Nos. 18691, 18692.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 31, 1994.

Dewayne F. Perry, Joplin, for appellant.

No appearance for respondent.

FLANIGAN, Presiding Judge.

The trial court, sitting without a jury, found defendant guilty of driving while intoxicated, a class B misdemeanor, § 577.010,[1]

---

1. All references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

and possession of drug paraphernalia with intent to use drug paraphernalia to inhale marijuana, a class A misdemeanor, § 195.233, as amended L.1989. Defendant was sentenced to six months in the county jail on the driving conviction and 15 days in the county jail on the possession conviction, the sentences to run concurrently. Defendant appeals from the two convictions which were based on separate informations.[2] The informations were tried jointly.

Appeal No. 18691 is from the conviction for driving while intoxicated, and Appeal No. 18692 is from the conviction for possession of drug paraphernalia. In each appeal, defendant's sole point is that the evidence is insufficient to support the conviction.

▆▆▆ The findings of the trial court in a jury-waived criminal case have the force and effect of a verdict of a jury. Mo. Const. art. I, § 22(a); *State v. Northern,* 472 S.W.2d 409, 411[3] (Mo.1971). On a challenge to the sufficiency of the evidence in a criminal case, this court's review is limited to a determination of whether there is sufficient evidence from which a reasonable juror, or in this case the trial court as the fact-finder, might have found the defendant guilty beyond a reasonable doubt. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993); *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). This court accepts as true all of the evidence favorable to the state, including all favorable inferences to be drawn from the evidence, and disregards all evidence and inferences to the contrary. *Id.* "Missouri no longer follows the rule which, in a circumstantial evidence case, required that the evidence must be inconsistent with any reasonable theory of defendant's innocence in order to support a conviction. *State v. Grim,* 854 S.W.2d 403, 406 (Mo. banc 1993)." *State v. Meanor,* 863 S.W.2d 884, 886 (Mo.banc 1993).

## No. 18691

▆▆▆ Defendant's sole point is that the evidence is insufficient to support the conviction of driving while intoxicated, and the trial court erred in ruling otherwise, in that the evidence "failed to establish beyond a reasonable doubt that defendant operated the vehicle while in an intoxicated state." Defendant argues that there was no evidence of when he was driving, "if at all," or when he became intoxicated, "if at all." He argues that between the time of the "accident" and the arrival of the officers he could have consumed alcohol or marijuana or cocaine. Defendant concedes "there is circumstantial evidence that defendant was operating the vehicle." On this appeal, defendant has not challenged the admissibility of any of the state's evidence to be recounted.

"A person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated or drugged condition." § 577.010.1. "Operates" means "physically driving or operating or being in actual physical control of a motor vehicle." § 577.001.1. A person is in an "intoxicated condition" when he is under the influence of alcohol, a controlled substance or drug, or any combination thereof. § 577.001.2.

"In the case of alcohol intoxication, the courts of this state have consistently held that intoxication sufficient to sustain a conviction may be proved by a lay witness who has had a reasonable opportunity to observe the alleged offender." *State v. Meanor,* 863 S.W.2d at 887[3]. "Where there is evidence that a person has recently consumed alcohol and marijuana and is then observed exhibiting signs of impaired judgment and motor skills consistent with intoxication, reasonably intelligent jurors may conclude that the cause of the impairment is the combined effects of alcohol and marijuana." *Id.* at 888.

In addition to its formal portions, the information charged: "On or about the 16th day of October 1992, at or near U.S. 71 Highway, north of Goodman, Missouri, in the County of McDonald, State of Missouri, the defendant operated a motor vehicle while under the

---

2. Although the two offenses arose out of a series of events which occurred on October 16, 1992, in McDonald County, the prosecutor did not attempt to charge the two offenses in the same information. See Rule 23.05. In this court the prosecutor has not filed a brief on behalf of the state in either appeal.

influence of a combination of alcohol and marijuana, a controlled substance."

The state's witnesses were officers Michael Hood and Kevin Guy of the Goodman Police Department, tow truck operator Ronald McDonald, Highway Patrolman Bonnie Johnson, and chemist Phillip Whittle. The state's evidence showed:

At 10:47 p.m., responding to a call, the law officers found defendant's vehicle, a van, in the middle of a field near U.S. Highway 71 immediately outside the city limits of Goodman. The occupants of the truck with which the van had collided were standing behind the truck on the highway. There was debris, including particles of glass, on the highway and on the northbound shoulder. There was no path or roadway into the field in which defendant's van was found. There were tire marks leading from the highway to the van. The front half of the van was almost demolished. The windshield on the driver's side of the van was damaged.

Defendant was the sole occupant of the van and emerged from the driver's side upon the approach of Officer Hood. Defendant was stumbling and was intoxicated. His nose was bleeding. Defendant could have hit his head on the windshield because of his bleeding nose. Defendant's speech was very slurred. Defendant's breath had the odor of alcohol. Defendant's eyes were bloodshot, glassy, and he was staring. Defendant used vulgar language in the presence of Trooper Bonnie Johnson.

Field sobriety tests performed by Trooper Johnson on defendant at the scene showed the defendant was impaired. Each of the field sobriety tests showed defendant was not able to follow directions. Trooper Johnson concluded that defendant's driving ability was impaired by reason of the effects of alcohol or drugs because of his eyes and the odor and the way he was acting. Defendant stated he had not taken tranquilizer pills or medication of any kind.

On the floorboard of the van the officers found a pack of Zigzag papers, a pair of hemostats, and a marijuana seed. The end of the hemostats had some burn marks on them and some residue. The residue on the jaws of the hemostats was marijuana. Hemostats and Zigzag papers are known to be used when marijuana is used or smoked. Defendant stated that he did use marijuana and had used marijuana. A bag found in defendant's van contained marijuana.

Defendant was given the Miranda warnings. Defendant said he was operating the vehicle. Defendant said he had been drinking that night. Defendant said he had had a beer or two. Defendant said that he did use marijuana, that he had used marijuana, that all the law officers would not be able to stop him until the day he died. According to tests conducted before midnight, defendant's urine contained evidence of marijuana, cocaine, and alcohol.

This court judicially knows that U.S. Highway 71 is a heavily traveled highway. Upon the arrival of the officers, defendant was emerging from the driver's side of his van. Defendant was not seriously injured, but his nose was bleeding. He refused medical treatment. It is a reasonable inference that the bleeding nose was due to defendant's striking the windshield on the driver's side. Occupants of the other vehicle which had been involved in the collision were still at the scene. It is a reasonable inference that the accident happened only a very short time before the arrival of the officers at the scene.

Defendant was the sole occupant of the van. No beer can or other container of alcohol was found in the van. The trial court could reasonably conclude that defendant's condition of intoxication was present during the time he was operating the van immediately prior to its coming to rest in the field and that his condition was not due to alcohol or drugs consumed after the van came to rest. Defendant was at all times in the presence of the officers after their arrival at the scene. This court holds that the evidence is sufficient to support the conviction of driving while intoxicated.

The judgment is affirmed.

No. 18692

■ Defendant's sole point is that the evidence is insufficient to support the conviction of possession of drug paraphernalia with in-

tent to use that paraphernalia to inhale marijuana, in that the evidence "failed to establish beyond a reasonable doubt that defendant knew of the hemostats and Zigzag papers' existence and illegal possible use."

Defendant argues that there was no evidence that he "knew the van, purported to be defendant's, had the hemostats and Zigzag papers in it.... The evidence presented was that the hemostats and Zigzag papers were found in the van and that marijuana residue was discovered on the hemostats. Other than that evidence, the only other evidence presented was the defendant's statement of his history of marijuana use and plans to continue that use."

Section 195.233, as amended Laws 1989, reads, in pertinent part: "1. It is unlawful for any person ... to possess with intent to use, drug paraphernalia to ... inhale ... a controlled substance...."

Section 195.010(18) contains the definition of drug paraphernalia used in the Comprehensive Drug Control Act of 1989, which includes § 195.233. As applicable here, that definition includes "all equipment, products and materials of any kind which are used, intended for use, or designed for use, in ... inhaling ... a controlled substance ... in violation of Sections 195.005 to 195.425." It includes, but is not limited to: "... (*l*) Objects used, intended for use, or designed for use in ... inhaling, or otherwise introducing marijuana ... into the human body."

Section 195.010(18) reads, in pertinent part:

In determining whether an object is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following:                         .

(a) Statements by an owner or by anyone in control of the object concerning its use;

.          .          .          .          .

(d) The proximity of the object to controlled substances or imitation controlled substances;

(e) The existence of any residue of controlled substances or imitation controlled substances on the object.

The information charged, in essence, that on October 16, 1992, in McDonald County, the defendant possessed drug paraphernalia consisting of a pair of hemostats and Zigzag rolling papers and did so with intent to use them to inhale marijuana.

Some of the state's evidence is set forth in that portion of this opinion dealing with Appeal No. 18691. On this appeal, defendant has not challenged the admissibility of any of the state's evidence.

Officer Hood testified that he arrived at defendant's van as defendant was emerging from the driver's side. The dome light was on and Hood observed the pair of hemostats on the floorboard in front of the passenger's seat. The Zigzag rolling papers were in the same location as the hemostats, "probably two or three inches apart."

Tow truck operator Ronald McDonald found a bag of marijuana seeds while checking under the seats of the van. "He found a hole in the seat which he reached into, and that's where he found the seeds."

Officer Guy found a marijuana seed just inside the passenger door lying right on the edge of the carpet. After defendant had been given the Miranda warnings, defendant made this statement to Officer Guy: "I smoke pot, I've been smoking pot, and all your laws, cops, whatever, will not stop me from smoking pot until the day I die."

Officer Guy testified that he had been a law enforcement instructor since 1988 and had instructed on marijuana paraphernalia, which includes anything commonly used while smoking or using marijuana. He said that marijuana is normally inhaled and that hemostats and rolling papers are articles which are "very commonly known to be used when marijuana is used or smoked."

In *State v. Brown*, 801 S.W.2d 474 (Mo. App.1990), defendant was convicted of possessing drug paraphernalia under the statute which preceded, and contained the same language as, § 195.233.1. Holding that the evidence was sufficient to support the conviction, this court said, at 477:

The fact that rolling papers were "one step" away from the bed that defendant

had occupied immediately before the search was conducted provided a basis upon which reasonable persons could find that the rolling papers were under the control of defendant. The fact that a supply of marijuana was readily available in the same room and close to the location where the rolling papers were found provided a basis upon which reasonable persons could find that the rolling papers were intended by defendant to be used in making marijuana cigarettes and were, therefore, drug paraphernalia.

See also *State v. Meanor, supra,* 863 S.W.2d at 889[6, 7]; *State v. Ingleright,* 782 S.W.2d 147, 149 (Mo.App.1990).

The presence of the hemostats and the Zigzag rolling papers in defendant's van, defendant's sole occupancy of the van, defendant's statements with regard to prior use of marijuana and his intention to continue that use, coupled with the other evidence, are sufficient to support the conviction.

The judgment is affirmed.

PREWITT and GARRISON, JJ., concur.