**STATE of Missouri, Respondent,**

v.

**Gary Lee FRIEND, Appellant.**

**No. WD 51797.**

Missouri Court of Appeals,
Western District.

March 18, 1997.

As Modified April 24, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 29, 1997.

Application to Transfer Denied
May 27, 1997.

John Redmond, Kansas City, for appellant.

Terrence M. Messonier, Assistant Prosecuting Attorney, Lafayette County, Lexington, for respondent.

HANNA, Judge.

The defendant was convicted of the class B misdemeanor of driving while intoxicated and was sentenced to 120 days in the county jail and a $500 fine. The defendant also was convicted of driving the wrong way on a divided highway, § 304.015, RSMo 1994, and was sentenced to a concurrent term of 120 days confinement and a $200 fine. The defendant appeals both convictions. The dispositive issue, with respect to the conviction for driving while intoxicated, is whether the evidence is sufficient to support the conviction.

On June 23, 1995, the Lafayette County sheriff's department requested that David Walker, a Concordia patrolman, go to I–70 to investigate a report that a truck was traveling in the wrong direction on I–70. Officer Walker observed the defendant's truck traveling east in the westbound lanes of I–70. He crossed the median and stopped the truck at the Concordia on-ramp.

Officer Walker smelled no odor of alcohol, although he did observe that the defendant was very nervous and jumpy. The defendant said that Mexicans were chasing him and were out to kill him and to cut his throat. His pupils were constricted, and, upon being asked to recite the alphabet, he missed two letters. He also failed the horizontal gaze nystagmus test.

Missouri State Highway Patrol Sergeant Mikel Cool arrived at the Concordia interchange and observed the defendant seated in the Concordia police car with Walker. When Sergeant Cook requested the defendant to step out of the police car, the defendant began to ramble about "which one of you is going to kill me" and "I guess this is it." The defendant refused to leave the car and stated that he had been blocked off, which had caused him to head the wrong way on the interstate highway. Sergeant Cool arrested the defendant and took him to the Lafayette county jail in Lexington. The defendant was administered a breathalyzer test, which registered zero for alcohol.

Because the defendant was unable to provide a urine sample, Sergeant Cool requested a blood test. The defendant agreed. The blood sample was forwarded to the Missouri State Highway Patrol crime laboratory in Jefferson City. William Marbaker, a chemist and supervisor of the toxicology section, performed a number of screen tests on the blood sample, which showed positive for methamphetamine.

While in the holding cell, the defendant was observed screaming, yelling, kicking at the ceiling, and punching the wall. He made statements such as "shoot me" and "I know you are going to kill me." The defendant had to be restrained.

On appeal, the defendant challenges the sufficiency of the evidence to sustain his conviction for driving under the influence. He argues that the state failed to produce substantial evidence that he operated a motor vehicle while under the influence of a combination of alcohol and drugs. He contends that his blood alcohol level was zero and that there was no evidence that he had consumed alcohol. Further, he maintains that there was no scientific evidence that the methamphetamine in his system exceeded a "threshold level to cause intoxication as required by 577.037.5(2)." There was no testimony as to the amount of methamphetamine in his system, the effect of the methamphetamine on his driving ability, or whether it would cause the behavior the defendant exhibited.

This case was tried to the court, and the decision of the judge "shall have the force and effect of the verdict of a jury." Rule 27.01(b). The review is limited to a determination of whether there is sufficient evidence from which a reasonable trier of fact might have found the defendant guilty beyond a reasonable doubt. *State v. Clay*, 909 S.W.2d 711, 714 (Mo.App.1995). Our review of the evidence includes all reasonable inferences drawn therefrom in the light most favorable to the state and disregards all evidence and inferences to the contrary. *Id.*

A person commits the class B misdemeanor of driving while intoxicated if he operates a motor vehicle while in a drugged condition. Section 577.010.1, RSMo 1994. The Missouri Supreme Court discussed the necessary standard of proof for driving in a drugged condition in *State v. Meanor*, 863

S.W.2d 884 (Mo. banc 1993). The court required that the proof necessary to establish driving under the influence of drugs should be no different than that to make a case for driving under the influence of alcohol. *Id.* at 888. Therefore, when there is evidence that a person has recently consumed alcohol and/or drugs and is then observed showing signs of impaired judgment and motor skills consistent with the use of such drugs or alcohol, it can be concluded that the drugs and/or alcohol have caused such impairment. *See id.* With respect to our case, the decisive point is that the behavior, which evidences impaired judgment and motor skills, must be consistent with the symptoms of the ingested drug.

■ Section 577.037.1, RSMo 1994, provides for the admissibility of a chemical analysis for drugs and alcohol. The statute also provides that, if the test for alcohol registers less than ten-hundredths of one percent of alcohol in the defendant's blood, the charge of driving under the influence of alcohol shall be dismissed with prejudice. Section 577.037.5, RSMo 1994. Paragraph 5 precludes dismissal if there is evidence that the defendant was under the influence of a drug or controlled substance, or a combination of either with or without alcohol, or if there is substantial evidence from physical observations of the witnesses or admissions of the defendant. Section 577.037.5(2), (3), RSMo 1994. What is lacking in this case is the evidence that the defendant was under the influence of drugs.

It is clear that the defendant had ingested methamphetamine, but it also was established that the defendant was not under the influence of alcohol. Additional evidence bearing upon his driving ability was his driving in the wrong lane of traffic and his bizarre behavior and thought patterns. However, there was no evidence which connected his abnormal behavior with the methamphetamine, although the chemist who performed the analysis on the defendant's blood was a state's witness.[1]

Drugs do not necessarily produce readily recognizable symptoms and behavior patterns. We are left to speculate whether the level of methamphetamine in the defendant's system was sufficient to cause the behavior described, and if so, whether the symptoms described were the result of methamphetamine or some other cause. Proof of impaired driving due to drugs is not as easily proven as impaired driving due to alcohol, for which a *prima facie* case of impairment has been statutorily established when the blood alcohol concentration reaches ten-hundredths of one percent. Section 577.012.1, RSMo 1994. Different drugs have varying effects on behavior, whereas alcohol has readily identifiable symptoms, such as loss of balance and bloodshot eyes, and frequently is identified by its odor. In order for the fact finder to conclude with reasonable certainty that the drug caused the violation, it must have some connecting evidence.

We have carefully compared the facts of this case with those of *State v. Meanor*, 863 S.W.2d 884 (Mo. banc 1993); *State v. Falcone*, 918 S.W.2d 288 (Mo.App.1996); and *State v. Owen*, 869 S.W.2d 310 (Mo.App. 1994). They each involved similar factual situations; however, in each one of these cases there was testimony that the level of drugs in the defendant's system was sufficient to impair his ability to drive a vehicle. In *Meanor*, the police officer described obnoxious behavior, the smell of intoxicants and marijuana, and considerable evidence of its presence in the car. The officer testified that the defendant was intoxicated. 863 S.W.2d at 887. In *Falcone*, the defendant admitted to having taken a prescription drug, Lorazepam, and she was described as swaying, unsteady, and failing balance tests. The director of the crime lab, a chemistry professor, opined that the defendant's urine test revealed levels of drugs that were above the threshold levels that have an effect on sensory and motor perception. 918 S.W.2d at 290–91. In *Owen*, the trooper who observed the defendant and his condition testified that, based on his observations of the defendant's eyes, odor, and his actions, his driving ability was impaired by reason of the effects of alcohol or drugs. 869 S.W.2d at 312.

1. For some unexplained reason, the chemist who had the necessary expertise did not testify as to the drug's effect on the defendant's driving ability.

We conclude that, under the facts of the present case, the court cannot find beyond a reasonable doubt that the defendant was driving in a drugged condition. There was no evidence to show that defendant's behavior, while abnormal, was consistent with identifiable symptoms of ingestion of methamphetamine that would impair the defendant's ability to drive. Significantly, there was no evidence that the level of methamphetamine, whatever the amount, was sufficient to impair his driving ability. The other points raised by the defendant on the issue of his conviction for driving under the influence are therefore moot.

The defendant also challenges his conviction for driving the wrong direction on a divided highway. He claims that the complaint does not sufficiently describe a violation under § 304.015, RSMo 1994, and that the evidence did not support the conviction. The description of the charge was that the defendant "[d]rove the wrong direction on highway divided into two or more roadways ..." in violation of § 304.015. The state's evidence came from Concordia police officer Walker, who testified as follows:

Q Officer Walker you were describing the circumstances surrounding your contact with the Defendant.

A I was requested to respond to I-70, that there was a truck travelling in the wrong direction, travelling east in the westbound lane. I entered I-70. The traffic was backed up. I did travel approximately one mile in the backed-up traffic, when I was flagged down by two subjects, one being a co-worker with the defendant. I was advised that the truck did cross the median, was travelling in the other direction.... So I did cut the median and travelled back toward Concordia, back into the city limits. At that time, I did see a truck in the other lane, the lane that I just came down, back on the westbound lane, travelling east. I crossed the median again and stopped the truck right at the top of the 58 mile marker of the Concordia on-ramp. He was travelling in the wrong direction.... The only statement he made at that time to me was that he had lost control, ran the truck into the median, and crossed over into the wrong lane, but he could not cross back.

Subparagraph 3 of § 304.015 deals with driving on the wrong side of a divided highway. The complaint adequately describes the offense with which the defendant was charged. Further, the officer's testimony is sufficient to sustain a conviction for operating a vehicle upon a highway which had been divided into two or more roadways.

The judgment of conviction of driving under the influence is reversed. The judgment of conviction of driving the wrong direction on a divided highway is affirmed.

BRECKENRIDGE, P.J., and LAURA DENVIR STITH, J., concur.