

# Missouri Court of Appeals

### Southern District

### In Division

STATE OF MISSOURI, )
)
Respondent, )
) No. SD38166
vs. )
) FILED: February 21, 2025
KENTON COWGILL, )
)
Appellant. )

## APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

Honorable Dean G. Dankelson, Judge

## AFFIRMED

A jury found Kenton Cowgill ("Defendant") guilty of the class A felony of second-degree murder (count 1), *see* section 565.021, the class B felony of driving while intoxicated (count 2), *see* section 577.010, the class E felony of resisting a lawful stop (count 3), *see* section 575.150, and the class C felony of second-degree trafficking (count 4), *see* section 579.068.[1] Thereafter, the circuit court convicted and sentenced Defendant to life in prison for count 1, fifteen years for count 2, seven years for count 3, and fifteen years for count 4, with counts 1 and 2 running concurrent to one another and counts 3 and 4 running consecutive to one another and to counts 1 and 2. Defendant appeals, raising four points relied on challenging the denial of a

---

[1] All statutory references are to RSMo 2016 as updated through RSMo Cum.Supp. (2020).

motion to disqualify the circuit court judge, the exclusion of certain evidence at trial, and the sufficiency of the evidence to prove counts 2 and 4. Finding no merit in Defendant's points, we affirm.

**Background**

The charges against Defendant arose from the following events on the morning of July 3, 2021. Police received a call that an individual (later identified as Defendant) was "slumped over" in a motor vehicle, which was parked but had its lights on. Officer Mackenzie Roach ("Officer Roach") and Officer Brian Wenberg ("Officer Wenberg") responded to the call. Officer Roach parked his patrol vehicle behind Defendant's vehicle with his emergency lights illuminated, and woke up Defendant by knocking on the vehicle's window. Officer Wenberg, suspecting Officer Roach might need assistance, parked his patrol vehicle further ahead.

Officer Roach believed that Defendant was intoxicated and asked for identification, which Defendant provided. Officer Roach walked back to his patrol vehicle to check Defendant's driving status and discovered that it was revoked. As Officer Roach then started to walk back to Defendant's vehicle, Defendant fled in his vehicle at a high rate of speed. Both Officer Roach and Officer Wenberg immediately pursued Defendant. The chase ended when Defendant entered an intersection and crashed into a vehicle operated by Robert McDermid ("Victim"), who tragically lost his life as a result.

By the time the officers arrived on the scene, Defendant had exited his vehicle and was on the ground near the vehicle's rear passenger wheel. Defendant was arrested and, later, when his vehicle was being towed, police discovered a bag containing eighty-six grams of methamphetamine. Defendant also tested positive for methamphetamine.

To the extent additional factual or procedural background is necessary to resolve any

point on appeal, it is included in our discussion of Defendant's points, *infra*.

## Discussion

### *Points 1 and 2*

In points 1 and 2, Defendant claims the circuit court "abused its discretion" in, specifically, "failing to disqualify the presiding judge and not assigning a new judge" and "excluding evidence that indicated [Victim] ran a red light before the accident[.]" We address these points together because they fail for the same reason.

Excluding certain exceptions not applicable to the claims of error at issue in these two points, "[f]or an allegation of error to be considered preserved and to receive more than plain error review, it must be objected to during the trial *and* presented to the trial court in a motion for new trial." **State v. Walter**, 479 S.W.3d 118, 123 (Mo. banc 2016). A motion for a new trial "shall be filed within fifteen days after the return of the verdict" and may be extended "for one additional period not to exceed ten days." Rule 29.11(b).[2]

In this case, the jury returned its guilty verdicts against Defendant on June 7, 2023, and the circuit court granted Defendant twenty-five days to file any post-trial motions. Thereafter, on July 12, 2023, Defendant filed a motion for a new trial. As the State correctly notes in its brief, Defendant's filing occurred thirty-five days after the jury's verdicts, thus exceeding the maximum time limitation of twenty-five days under Rule 29.11(b). "The time limitations in Rule 29.11 are mandatory" and "[a]n untimely motion preserves nothing for review." **State v. Brock**, 113 S.W.3d 227, 234 (Mo.App. 2003). Accordingly, by failing to file a timely motion for a new trial, Defendant failed to preserve for appellate review the claims he attempts to assert in points 1 and 2.

---

[2] All rule references are to Missouri Court Rules (2023).

We have discretion to review unpreserved claims for plain error. ***State v. Brandolese***, 601 S.W.3d 519, 525-26 (Mo. banc 2020). Nevertheless, if a defendant fails to make a facial showing of manifest injustice or miscarriage of justice, we should decline to exercise such review. ***Id.*** at 526. In his initial brief, Defendant asserts, incorrectly, that he preserved the claims of error in points 1 and 2 for appellate review. We note, however, that Defendant was put on notice, by way of the State's brief, that these claims were not preserved as he alleged. Yet, Defendant did not file a reply brief. In short, nothing in the briefing before us amounts to a facial showing of a manifest injustice or miscarriage of justice related to these claims. As such a showing is absent, we decline to review the unpreserved claims in points 1 and 2 for plain error.

### *Point 3*

In point 3, Defendant challenges the sufficiency of the evidence to sustain his conviction under count 2, which charged Defendant with the class B felony of driving while intoxicated for "operat[ing] a motor vehicle while under the influence of methamphetamine[.]" Defendant does not dispute that he was operating a motor vehicle at the time of the alleged offense, but Defendant challenges the sufficiency of the evidence to support a finding that he did so under the influence of methamphetamine. Defendant's challenge is without merit.

As relevant to this point (and point 4, *infra*), allegations as to the sufficiency of the evidence to sustain a conviction need not be included in a timely-filed motion for a new trial. *See* Rule 29.11(d)(3). "Sufficiency of the evidence is reviewed on the merits, not as plain error." ***State v. Claycomb***, 470 S.W.3d 358, 362 (Mo. banc 2015). "When judging the sufficiency of the evidence to support a conviction, we may not weigh the evidence but accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore all contrary evidence and inferences." ***State v. Latall***, 271 S.W.3d 561, 566 (Mo. banc 2008)

4

(internal quotation marks omitted). In determining whether the evidence was sufficient to support a conviction, we evaluate "only whether there was sufficient evidence from which the trier of fact reasonably could have found the defendant guilty." ***Id.***

This Court has recognized that the determination as to whether someone is under the influence of a proscribed substance in the context of a driving while intoxicated charge involves three components:

> (1) *impaired ability*—the defendant's impaired ability in any manner to operate a motor vehicle at the time of the alleged offense; (2) *presence of the substance*—the presence of the proscribed substance in the defendant's body at the time of the alleged offense; and (3) *causation*—the causal connection between the presence of the proscribed substance and the impaired ability to operate a motor vehicle.

***State v. Hoy***, 219 S.W.3d 796, 802 (Mo.App. 2007). "If any component is not supported by sufficient evidence, then the intoxicated-condition element of the offense is not supported by sufficient evidence, and the defendant's conviction cannot stand." ***Id.*** We will address the evidence supporting each of these three components in turn.

Impaired Ability

Immediately prior to the alleged offense of driving while intoxicated, which occurred just after 8:30 a.m., Defendant was passed out in the driver's seat of a parked car. Officer Roach woke Defendant up, and Defendant stated that he did not know why he was there or where he was. Officer Roach observed that Defendant appeared lethargic, his eyes were constricted and bloodshot, and his speech was raspy. Soon thereafter, Defendant fled in his car, thereby commencing the alleged offense. While attempting to escape a police pursuit, Defendant ignored a stop sign, drove as fast as eighty miles per hour in a forty-five mile-per-hour zone, drifted into the left-turn lane several times, swerved around other stopped vehicles, drove through a red light, and ultimately failed to yield and struck Victim's vehicle at sixty-two miles

5

per hour. All of this evidence was sufficient to support the finding that Defendant's ability to operate a motor vehicle was impaired at the time of the alleged offense.

<u>Presence of the Substance</u>

Approximately two hours after the fatal collision, Defendant consented to a blood draw. That blood sample tested positive for methamphetamine and negative for alcohol. The evidence of this test result was sufficient to support the finding that methamphetamine was in Defendant's body at the time of the alleged offense.

<u>Causation</u>

The causation component of the analysis appears to be the crux of Defendant's argument. In addressing this issue, Defendant compares the instant case to ***State v. Friend***, 943 S.W.2d 800 (Mo.App. 1997). In ***Friend***, the defendant convicted of driving while intoxicated had exhibited abnormal behaviors at or near the time of the alleged offense and a blood test later revealed the presence of methamphetamine in his body. ***Id.*** at 801. "However, there was no evidence which connected his abnormal behavior with the methamphetamine, although the chemist who performed the analysis on defendant's blood was a state's witness." ***Id.*** at 802. "For some unexplained reason, the chemist who had the necessary expertise did not testify as to the drug's effect on the defendant's driving ability." ***Id.*** at 802 n.1. The western district of this Court noted the difference between drugs, which "have varying effects on behavior," and alcohol which "has readily identifiable symptoms[.]" ***Id.*** at 802. Therefore, "[i]n order for the fact finder to conclude with reasonable certainty that the drug caused the violation, it must have some connecting evidence." ***Id.***

Defendant argues that, like in ***Friend***, although he tested positive for methamphetamine, there was no evidence connecting that drug to any impairment. In addressing Defendant's

argument, we note the portion of the *Friend* opinion distinguishing certain other cases where sufficient evidence of causation was present:

> We have carefully compared the facts of this case with those of *State v. Meanor*, 863 S.W.2d 884 (Mo. banc 1993); *State v. Falcone*, 918 S.W.2d 288 (Mo.App. 1996); and *State v. Owen*, 869 S.W.2d 310 (Mo.App. 1994). They each involved similar factual situations; however, in each one of these cases there was testimony that the level of drugs in the defendant's system was sufficient to impair his ability to drive a vehicle. In *Meanor*, the police officer described obnoxious behavior, the smell of intoxicants and marijuana, and considerable evidence of its presence in the car. The officer testified that the defendant was intoxicated. 863 S.W.2d at 887. In *Falcone*, the defendant admitted to having taken a prescription drug, Lorazepam, and she was described as swaying, unsteady, and failing balance tests. The director of the crime lab, a chemistry professor, opined that the defendant's urine test revealed levels of drugs that were above the threshold levels that have an effect on sensory and motor perception. 918 S.W.2d at 290–91. In *Owen*, the trooper who observed the defendant and his condition testified that, based on his observations of the defendant's eyes, odor, and his actions, his driving ability was impaired by reason of the effects of alcohol or drugs. 869 S.W.2d at 312.

*Id.* (bold added).

Here, there are also facts that distinguish the instant case from the factual scenario unique to *Friend*. First and foremost, the toxicologist testified regarding the effects of methamphetamine. That testimony revealed that methamphetamine, when acting as a central nervous system stimulant, can cause a user to feel "euphoric" or "agitated, really nervous, anxious" and can cause "body tremors or uncontrollable body movements[.]" This "high" period can be followed by a "crash" period where the "euphoric feeling can turn into a very fatigued, maybe falling asleep, feeling." The toxicologist opined that methamphetamine can impair a person's judgment and "both the stimulating properties and the crash can cause impairment."

It is true, as Defendant notes, that the toxicologist did not determine how much methamphetamine was in Defendant's blood or when he may have taken it. Thus, according to Defendant, the instant case is more like *Friend* and less like *Falcone*, which included testimony

7

that the drug level involved exceeded a threshold level to affect sensory and motor perception. *See* ***Falcone***, 918 S.W.2d at 290–91.

Yet, unlike ***Friend***, the toxicologist in this case provided specific testimony detailing the impairing effects of methamphetamine. Furthermore, Defendant exhibited behaviors consistent with several of these impairing effects. Defendant fell asleep in an unusual location and at an unusual time of day and appeared lethargic. Defendant then demonstrated impaired judgment by fleeing from police in a dangerous manner. In addition to the toxicologist's testimony, Officer Wenberg testified (referring to people "passed out behind the wheel of a car"), "I know from my experience that that has a tendency to turn out to be intoxicated people and intoxicated people make very bad decisions, . . . such as . . . running[.]" These opinions—from both the toxicologist (as to the impairing effects of methamphetamine specifically) and Officer Wenberg (as to intoxication more generally)—permitted a reasonable inference that Defendant's behavior, which was consistent with the intoxicating effects of methamphetamine, was causally connected to the presence of methamphetamine in Defendant's body.

As a final matter, we note Officer Roach testified that he has specialized training and experience in detecting intoxication and interacted face-to-face with Defendant before Defendant fled. Based on his observations, Officer Roach opined that Defendant "was under the influence." This testimony is similar to the officer and trooper testimony that distinguished both ***Meanor*** and ***Owen*** from ***Friend***. *See* ***Meanor***, 863 S.W.2d at 887; ***Owen***, 869 S.W.2d at 312; *see also* ***State v. Maggard***, 906 S.W.2d 845, 849 (Mo.App. 1995) (stating that "[w]hether a defendant is intoxicated may be proven by any witness who had a reasonable opportunity to observe him").

Based upon the above analysis of the evidence, we conclude that Defendant's conviction for driving while intoxicated was supported by sufficient evidence from which the jury could

find him guilty beyond a reasonable doubt. Accordingly, point 3 is denied.

***Point 4***

In point 4, Defendant challenges the sufficiency of the evidence to sustain his conviction under count 4, which charged Defendant with the class C felony of second-degree trafficking for "knowingly possess[ing] more than 30 grams of any material containing any quantity of methamphetamine." Defendant does not dispute that a bag containing 86 grams of methamphetamine was discovered near where he was arrested, but Defendant challenges the sufficiency of the evidence to support a finding that he possessed the methamphetamine. Again, Defendant's challenge is without merit.

As applicable to Defendant's challenge, this Court has previously observed the following:

> To sustain a conviction for possession of a controlled substance, the State must prove conscious and intentional possession of the substance, either actual or constructive, and awareness of the presence and nature of the controlled substance. Both possession and knowledge may be proved by circumstantial evidence. These same rules apply to drug trafficking by knowingly possessing a controlled substance under section 579.068. . . .

***State v. Brown***, 661 S.W.3d 27, 36 (Mo.App. 2023) (internal citations and quotation marks omitted). We note that Defendant's challenge is limited to the possession element only; therefore, we need not consider or address the associated *mens rea* element.

The subject methamphetamine was discovered when Defendant's vehicle was towed away from its final resting place following the crash. The methamphetamine was in a yellow bag on the ground underneath the vehicle's rear axle, near the wheel on the passenger side. The bag had droplets of blood on it, and testing revealed the blood belonged to Defendant. Photographs admitted into evidence show a blood trail on the road stretching from the rear passenger wheel to where Defendant was located after the crash and upon his arrest. Officer Wenberg testified that, while in pursuit of Defendant, he was approximately 600 feet from

9

Defendant's vehicle when the crash occurred; that as he was stopping his patrol vehicle, he saw the front passenger door of Defendant's vehicle open; that upon exiting his patrol vehicle, he found Defendant on his hands and knees outside the passenger side of his vehicle; and that Defendant was bleeding from an injury to his forehead.

Defendant argues that any link between himself and the bag of methamphetamine is "speculative" because there were "blood splatter and trails of blood all over the place"; the blood droplets "could have gotten on the bag in a variety of ways like when police were cleaning up the wreckage using a leaf blower"; and although he had "blood all over his hands and forearms[,]" "there were only droplets not smears of blood on the bag[.]"  This argument misunderstands the difference between a reasonable inference and speculation.

"An inference is a conclusion drawn by reason from facts established by proof; a deduction or conclusion from facts or propositions known to be true." *State v. Waller*, 163 S.W.3d 593, 595 (Mo.App. 2005) (internal quotation marks omitted).  "An inference is different from a supposition, a supposition being a conjecture based on the possibility that a thing could have happened." *Id.*  "It is an idea or a notion founded on the probability that a thing may have occurred, but without proof that it did occur." *Id.*  "A criminal conviction cannot be based upon probabilities and speculation." *State v. McMullin*, 136 S.W.3d 566, 573 (Mo.App. 2004).

Here, no such proof is lacking.  The facts known to be true are that Defendant was bleeding from a head wound, there was a blood trail from where he was arrested to the rear passenger wheel of his vehicle, and the bag of methamphetamine behind said wheel had droplets of Defendant's blood on it.  From these facts, it is reasonable to deduce that immediately after the crash Defendant attempted to conceal or dispose of the methamphetamine behind the rear passenger wheel.  The evidence allowing for this reasonable inference is sufficient to support a

10

finding of actual possession. *See **State v. Welch**,* 603 S.W.3d 745, 749 (Mo.App. 2020) (stating that "[i]n completing his attempted concealment or disposal of the illicit materials, Defendant necessarily would have had those materials within his easy reach and convenient control, *i.e.*, in his actual possession"). To the extent the evidence cited by Defendant also allows for contrary inferences, our standard of review requires that we disregard such inferences. *See **Latall**,* 271 S.W.3d at 566. Accordingly, point 4 is denied.

**Decision**

The circuit court's judgment is affirmed.

BECKY J. WEST, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS